
CLOSED CIVIL CASE

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 06-21040-CIV-MORENO

ARLEN HOUSE CONDOMINIUM ASSOCIATION, INC.,

    Plaintiff,

vs.

HOTEL EMPLOYEES AND RESTAURANT EMPLOYEES INTERNATIONAL UNION LOCAL 355,

    Defendant.
_____/

## ORDER GRANTING MOTION TO DISMISS AND DENYING ALL OTHER PENDING MOTIONS AS MOOT

THIS CAUSE came before the Court upon Defendant's Motion to Dismiss **(D.E. No. 11)**, filed on **June 26, 2006**.

THE COURT has considered the motion, the response, and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion to dismiss is GRANTED and all other pending motions are DENIED as moot.

### STATEMENT OF FACTS

On September 1, 1987, Plaintiff, Arlen House Condominium Association, Inc. ("Arlen House") and Defendant, Hotel Employees and Restaurant Employees International Union, Local 355, Service Employees International, Local 11 ("Union") entered into a Collective Bargaining Agreement ("Agreement") covering various workers at Arlen House. The Agreement was renewable

automatically on a year to year basis unless one of the parties announced, in writing within 60 days of the renewal date, its intention to terminate or modify the agreement.

Over the years, the parties amended the Agreement several times. The most recent modification was in 1997, when the parties included the following continuation clause:

> Said agreement shall extend through September 1, 1997 to February 1, 1999, and thereafter from year to year, unless either party, prior to that date, signifies in writing its desire to change or modify the Agreement, sixty (60) days before the expiration of this agreement; except that the parties agree that wage provisions herein shall be open for negotiation effective February 1, 1999.

(Pl.'s Am. Compl., Exhibit B, Amendment and Extension Agreement to the Agreement, ¶ 2 [the "Continuation Clause"].)

On November 19, 1999, Arlen House informed the Union in writing of its intent to modify the Agreement. (Obregon Op. and Award at 3.) The two parties entered into negotiations but ceased after November 15, 2000 without any modified agreement. Id. Nevertheless, the parties continued to act pursuant to the terms of the Agreement: Arlen House continued to abide by Article 4 of the Agreement, which authorized it to deduct union dues each month from its employees' pay check, and the Union continued to bill Arlen House for Union dues and initiation fees. Id. at 4.

On March 9, 2005, Arlen House terminated Ramon Obregon, a general maintenance employee (Id. at 4.) and on March 10, 2005, Peter Kaufman, a doorman. After it became apparent that Arlen House and the Union could not resolve the Obregon and Kaufman terminations amicably, the Union proceeded to arbitration pursuant to Articles 12 and 16 of the Agreement. (Obregon Op. and Award at 4; Kaufman Op. and Award at 2.)

On or around November 30, 2005, the parties selected an arbitrator to hear Obregon's

grievance, and agreed to have a hearing on March 2, 2006. On or around December 6, 2005 the parties selected an arbitrator to hear Kaufman's grievance and agreed on February 23, 2006 as a hearing date.

However, on February 16, 2006, counsel for Arlen House notified both Arbitrators that in reviewing the files for arbitration, it was clear that the Agreement had expired on August 31, 2000, and, thus, Arlen House was under no obligation to arbitrate. Counsel for Arlen House attempted to cancel the arbitrations and close the cases with the Federal Mediation and Conciliation Services. Since both Arbitrators opposed such a unilateral action, the parties agreed to submit to arbitration the issue of the arbitrability of Obregon's grievance. On March 23, 2006, the Obregon Arbitrator found that the Agreement remained in existence, and, therefore, the arbitration provision was enforceable. The Obregon Arbitrator further determined that the resolution of the grievance could proceed to arbitration.

Arlen House refused to participate in the arbitration hearing on the Kaufman Grievance, based on its position that the Agreement had expired and therefore the grievance was not arbitrable. The Arbitrator in the Kaufman Grievance decided that he had the authority to hear the case and entered an award in Kaufman's favor, ordering Arlen House to reinstate him with full back pay.

Both Arbitrators based their decisions on the issue of arbitrability on Arlen House's actions. They reasoned that absent an agreement, Arlen House's automatic deduction of funds from its employees' wages to pay Union dues would have amounted to a criminal offense. Moreover, they found that Arlen House's other actions, such as allowing a union bulletin board to be posted and allowing union members to pass out flyers, clearly indicated that Arlen House had not renounced the

Agreement.

Arlen House filed the instant case seeking to vacate the arbitration awards and for declaratory relief.

### STANDARD OF REVIEW

When considering a motion to dismiss under 12(b)(6), the court must accept all well-pleaded allegations of the Complaint as true. The allegations in the complaint should be construed in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

However, the long-standing principle enunciated in Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984) according to which a court can dismiss a complaint only if "no relief could be granted under any set of facts that could be proved consistent with the allegations," no longer applies. The Supreme Court in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1968 (2007) declared that, to survive a motion to dismiss, a complaint must "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." The Eleventh Circuit has embraced the Twombly "plausibility standard." Rivell v. Private Health Care Sys. Inc., 520 F.3d 1308, 1309-10 (11th Cir. 2008).

### ANALYSIS

**I.     Plaintiff's Request to Vacate the Arbitrators' Awards**

In Count I of its Amended Complaint, Arlen House alleges that the Arbitrators did not have authority to determine the existence of a contract between the parties based on the conduct of the parties after the contract had expired; that the Arbitrators ignored the plain language of Article 30 of the Agreement; that their awards were in violation of Article 16 of the Agreement; and that both

Arbitrators exceeded the powers and authority conferred to them by the Agreement. Consequently, Arlen House asks this court to vacate both Arbitrators' awards.

A court's review of arbitration awards must abide by one of the narrowest standards of judicial review in all of American jurisprudence. See Bakery, Confectionary & Tobacco Workers Local Union No. 362-T, AFL-CIO-CLC v. Brown & Williamson Tobacco Corp., 971 F.2d 652, 655 (11thCir. 1992) (stating that given an arbitrator's broad authority to interpret an agreement between parties, a court of appeal's scope of review is "exceedingly narrow"). A court's review of labor arbitration awards is "severely limited" and "among the narrowest known to the law." 94 Am. Jur. Trials 211 Appealing Adverse Arbitration Awards § 233 (2007).

The justification in support of this narrow scope of review was articulated by the Supreme Court in the Steelworkers Trilogy. The court pointed out that congressional policy favors resolution of labor disputes through "the machinery of arbitration." United Steelworkers of Am. v. Am. Mfg. Co., 363 U.S. 564, 566 (1960); United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-583 (1960); United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960). Judicial review "of the merits of an award would be inimical to the public policy underlying the limited role assigned to the federal courts in the arbitral arena." 94 Am. Jur. Trials 211 Appealing Adverse Arbitration Awards § 102 (2007). Such narrow judicial review is necessary to ensure that arbitration is not subverted by excessive court intervention, which would undermine the federal goal of encouraging the use of arbitration as an alternative to formal litigation. Id.

The Eleventh Circuit has defined the scope of review of labor arbitration decisions as "exceedingly narrow" and "tailored to suit the vital role" an arbitrator plays in federal labor law.

Loveless v. Eastern Air Lines, Inc., 681 F.2d 1272, 1275 (11th Cir. 1982). To the extent courts interfere in this field, they diminish the role of the arbitrator as "a linchpin of the ongoing collective bargaining relationship" and detract from "the expeditiousness and the finality of the arbitration process." Id. In light of this exceedingly narrow scope of review, courts have usually confined their scrutiny of arbitration awards to questions of fairness and arbitral impartiality. Id.

The court in Loveless provided three interrelated grounds that have guided courts in their substantive review of arbitral awards: (1) "whether the award is irrational"; (2) "whether the award draws its essence from the letter or purpose of the collective bargaining agreement"; and (3) "whether the arbitrator conformed to a specific contractual limitation upon his authority." Id. at 1276. The court further specified that these grounds are not alternative bases for reviewing an arbitrator's award, but rather, they "represent different emphases that are more or less relevant" given the fact pattern in a certain case. Id. at n. 8.

In the present case, Arlen House's allegations can be classified under the second and third grounds for review. Arlen House contends that the Arbitrators' awards do not draw their essence from the collective bargaining agreement because the Arbitrators ignored the plain language of Article 30 of the Agreement, and they determined the existence of a contract based on the conduct of the parties after the contract had expired. In addition, Arlen House contends that the Arbitrators did not conform to Article 16 of the Agreement, which limits the authority of an arbitrator by preventing him "from altering, modifying, or adding to the provisions" of the Agreement. Therefore, Arlen House alleges that both Arbitrators have exceeded their authority under the Agreement.

(1)     Whether The Arbitrators' Awards Fail To Draw Their Essence From The Agreement

The question of the arbitrability of the Obregon and Kaufman Grievances was dependent on the interpretation of the Continuation Clause in the Agreement. The Continuation Clause in the Agreement provides: "Said agreement shall extend through and including September 1, 1997 to February 1, 1999 and thereafter from year to year, unless either party, prior to that date, signifies in writing its desire to modify the Agreement, sixty (60) days before the expiration of this agreement ... ." Arlen House argues that its November 19, 1999 notice to the Union that it wished to make changes to the contract has in fact terminated the contract.

However, the Arbitrators in both cases concluded that notwithstanding Arlen House's attempt to modify the contract, the Continuation Clause had not expired. The Arbitrators primarily based their conclusions on the fact that Arlen House continued to deduct Union dues from their employees' monthly salaries. In their view, Arlen House's only source of authority to deduct those dues was the Collective Bargaining Agreement. Id. If the Agreement had expired, then Arlen House's actions would have been subject to criminal proceedings for unfair labor practices pursuant to 29 U.S.C. § 186 (a)(1) and (2). Both Arbitrators assumed that Arlen House would not have subjected itself voluntarily to criminal penalties and, thus, inferred that Arlen House must have believed it was still bound by the Agreement. The Arbitrators concluded that it could not have been Arlen House's intention to terminate the Agreement at the time it gave notice of modification to the Union and that the Agreement, therefore, remained in effect.

Arlen House argues that the Arbitrators failed to refer to the plain language in the Continuation Clause in making their determination that the Agreement still existed, and, thus, failed to draw their decisions from the essence of the agreement. Both Arbitrators, did, however, make

reference to the essence and effect of the Continuation Clause in their opinions. The Arbitrator in the Obregon Grievance, referring to the bargaining history between the parties in his attempt to ascertain the intent of the parties in the present situation, stated:

> [A]ccording to the bargaining history the parties also went through a previous long period (1993-1997) without any changes being agreed to. Thus, it is not unheard of for these parties to have multiple years without agreeing to any changes. It is true that this recent period came after an effort to modify, and thus it could be argued that absent an agreement on modification the contract terminated.

(Obregon Op. and Award at 8-9.) The Arbitrator in the Kaufman Grievance stated:

> The contract between the parties, while originally setting forth what appeared to be a termination date, specifically and unequivocally, allowed for the agreement to continue, while more or less in "limbo." The original contract and all successor agreements that were reduced to writing contain a provision that calls for the agreement to continue for additional period of time for one year at a time.
>
> If the contract had expired, and if it had clearly been so treated and viewed by the Employer as having expired, why did Arlen House continue to adhere to, honor and comply with many of the contract's provisions?

(Kaufman Op. and Award at 12.) Thus, to some extent, both Arbitrators did incorporate the Continuation Clause in their analyses.

Although the language of the Continuation Clause is relatively clear, both Arbitrators found a latent ambiguity in the contract based upon their examination of the parties' dealings with each other. See Loveless, 681 F.2d at 1278. Because of the latent ambiguity, it was within the Arbitrators' authority to include extrinsic evidence to determine the intent of the parties. See Id. at 1279. An arbitrator may look for guidance from many sources when interpreting the collective bargaining agreement, and still be drawing the award from the essence of the agreement. See Id. Weighing extrinsic evidence into the interpretation of the agreement does not negate the fact that the

Arbitrators in this case were drawing the award from the essence of the Agreement.

The Arbitrator in the Obregon Grievance began his interpretation of the Continuation Clause by acknowledging that, pursuant to Litton Fin. Printing Div. v. NLRB, 501 U.S. 190 (1991), the duty to arbitrate does not survive an expired Agreement, unless the parties have agreed to arbitrate after its expiration. (Obregon Op. and Award at 5.) Whereas the contract had clearly expired in Litton, the Arbitrator in the Obregon Grievance found that in this case "the evidence was not so clear." Id. After analyzing the evidence, he concluded that Arlen House had acted as if the Agreement still existed.

The Arbitrator in the Kaufmann Grievance engaged in a similar analysis and pointed out that while the contract set forth a termination date, it "specifically and unequivocally, allowed for the agreement to continue, more or less in 'limbo.'" (Kaufman Op. and Award at 12.) The Kaufman Arbitrator similarly concluded that Arlen House's conduct (e.g., making regular dues deductions from its employees; making monthly remittances to the Union; making periodic contributions to the Union's pension and welfare fund) was inconsistent with the belief that the contract between the parties had expired, and, therefore, inferred that the Agreement continued to exist. (See Kaufman Op. and Award at 13-14.)

Arlen House contends that the dues deduction does not operate to perpetuate the Agreement. Arlen House claims that it was authorized to deduct dues from its employees' pay checks by the Dues Check-Off Authorizations signed by the employees and that it did not need the authorization to do so from the Agreement. Arlen House argues that, therefore, the whole basis for the Arbitrators' determinations is faulty. See Id. However, in order for this court to vacate the arbitrators' awards, there must be clear evidence that the Arbitrators manifestly disregarded the law. Brown v. ITT

Consumer Fin. Corp., 211 F.3d 1217, 1223 (11th Cir. 2000).

The Arbitrators at no point stated that they knew and were intentionally disregarding the law. (See Obregon Op. And Award at 1-11; Kaufman Op. And Award at 1-19.) Rather, if there was a mistake, it had to do with the Arbitrators' interpretation of the law, which does not justify vacating an arbitration award. Brown, 211 F.3d at 1223. Furthermore, since this is a question of interpreting the Agreement, which is for the Arbitrators to decide, and because it was the Arbitrators' construction that was bargained for by the parties, this court "has no business overruling" them simply because its interpretation is different from the Arbitrators'. Enter. Wheel & Car Corp., 363 U.S. at 599; see also United Paperworkers Int'l Union, AFL-CIO v. Misco. Inc., 484 U.S. 29, 38 (1987) (stating that in interpreting a contract, arbitrators are not free to ignore its plain language but that courts, however, "should not reject an award on the ground that the arbitrator misread the contract.")

In addition, Arlen House argues that the Arbitrators were not entitled to rely on the conduct of the parties to determine whether the contract continued to exist after the modification clause was triggered. To support this contention, Arlen House, cites to the misapplied proposition that the duty of the Arbitrators in applying the Agreement was to give effect to the intent of the parties when the agreement was formed rather than after it was terminated. Had the Arbitrators looked at the intent of the parties when the agreement was formed, Arlen House argues, they could not have reached the conclusion that the Agreement continued to exist.

However, "absent some express restriction upon the arbitrator's authority, the arbitrator is not restricted to... the common law rules for the interpretation of contracts." Loveless, 681 F.2d

1272, 1280 (11th Cir. 1982) (quoting <u>Gunther v. San Diego & Ariz. E. Ry.</u>, 382 U.S. 257, 261 (1965)). The Arbitrators, therefore, were not obligated to interpret the contract according to cannons of contract interpretation. They could examine the parties' conduct after the Modification Clause was triggered to interpret the intent of the parties regarding the Agreement. The Court may not overturn the Arbitrators' decisions simply because it would have come to a different conclusion. <u>Enter. Wheel & Car Corp.</u>, 363 U.S. at 599. Only when the Arbitrators' words manifest an infidelity to their obligation to draw the award from the essence of the contract do courts have the right to refuse enforcement of the award. <u>Loveless</u>, 681 F.2d 1272, 1279. In this case, however, there was no such manifest infidelity.

The issues discussed above compel the conclusion that the Arbitrators did not fail to draw the essence of their awards from the Agreement.

(2)     <u>Whether The Arbitrators Exceeded Their Authority Under The Agreement</u>

An arbitrator exceeds the scope of his authority and issues an award that fails to draw its essence from the collective bargaining agreement when the arbitrator issues an award that contradicts the express language of the agreement. <u>Bruno's, Inc. v. United Food & Commercial Workers Int'l Union, Local 1657</u>, 858 F.2d 1529, 1531 (11th Cir. 1988) (quoting <u>United Steel Workers of Am. v. Enter. Wheel & Car Corp.</u>, 363 U.S. 593, 597). This language sheds some light on the principle expressed by the court in <u>Loveless</u>, that the grounds for review of an arbitration award are interrelated. As a logical consequence of this interdependence, the analysis of these grounds is also interrelated. Thus, the conclusion of the previous section that the Arbitrators' awards did not fail to draw their essence from the Agreement, can be incorporated into the present section to support the

-11-

assertion that when they interpreted the contract, the Arbitrators did not exceed their authority under the Agreement.

Arlen House also bases its legal conclusion that the Arbitrators have exceeded their authority under the Agreement, on the allegation that the Arbitrators did not conform to Article 16 of the Agreement. That Article contains express restrictions on an arbitrator's authority and prevents an arbitrator from altering, modifying or adding to the provisions of the Agreement. Arlen House claims that the Arbitrators exceeded their authority and altered the terms of the Agreement by basing their primary interpretation of the Agreement on the parties' conduct. However, as the court in Loveless pointed out, 'no modification' clauses are not necessarily dispositive in deciding whether to overturn an arbitration award. Sometimes an arbitrator may "discern a latent ambiguity in the contract" and "then be able to resolve the latent ambiguity by resort to permissible sources of extrinsic evidence." See Loveless at 1278-79 n. 14 (citing to U.A.W. v. White Motor Corp., 505 F.2d 1193, 1198-99 (8th Cir. 1974); Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1130 & n. 31 (3d Cir. 1969); and Corbin, Contracts §§ 542-43 (one vol. ed. 1952)). In addition, there are no further restrictions on an arbitrator's authority within the Agreement. (See Agreement, Article 16.)

Although Arlen House claims that it pleaded sufficient facts in its Amended Complaint to survive a Motion to Dismiss for Failure to State a Claim, the documents included in the Amended Complaint (i.e., the Agreement and the Arbitrators' awards), as examined in the previous paragraphs, reveal its allegations to be unfounded. The truth of these allegations is not admitted for purposes of a motion to dismiss for failure to state a claim. Interstate Natural Gas Co. v. S. Cal. Gas Co., 209 F.2d 380, 384 (9th Cir. 1953). Because Arlen House's allegations are unfounded and cannot be

admitted for purposes of Defendant's Motion to Dismiss, Arlen House has failed to make factual allegations that "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). Therefore, Defendant's Motion to Dismiss Count I for Failure to State a Claim is granted.

## II.     Plaintiff's Request for Declaratory Relief

In Count II of its Amended Complaint, Arlen House seeks a declaratory judgment that the Agreement had ceased to exist and that it is not obligated to arbitrate disputes pursuant to the expired Agreement.

The court in La. Nev. Transit Co. v. Marathon Oil Co., 770 F. Supp. 325, 327 (W.D. La. 1991) explained that federal law governs "whether a court may properly render a declaratory judgment." (citing to Nat'l R.R. Passenger Corp. v. Consolidated Rail Corp., 670 F. Supp. 424, 429 n. 7 (D. D.C. 1987.) Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 (1982), a court may render declaratory relief where there is a substantial controversy of sufficient immediacy between parties within its jurisdiction. (See also La. Nev. Transit Co., 770 F. Supp. at 328.) Declaratory relief under 28 U.S.C. § 2201 "is generally available in actions brought under the Labor-Management Relations Act § 301." Huettig & Schromm, Inc. v. Landscape Contractors Council, 790 F.2d 1421, 1425 (9th Cir. 1986). However, district courts have discretion in determining whether to entertain an action for declaratory relief, even provided it has subject matter jurisdiction. See Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995) (citing to Brillhart v. Excess Ins. Co., 316 U.S. 491 (1942)).

In the present case, the Union argues that this Court lacks subject matter jurisdiction to make

the declarations sought by Arlen House. (Mot. To Dismiss Compl. and Mem. Of Law in Supp. Thereof at 10 ["Mot. To Dismiss"].) Arlen House responds that the Court has jurisdiction because there is an actual controversy between the parties. (Plaintiff's Response To Defendant's Motion To Dismiss Plaintiff's Amended Complaint With Incorporated Memorandum Of Law, at 9.)

Whether an employer is bound to arbitrate, as well as what issues it must arbitrate, is a matter generally to be determined by a court. AT&T Tech., Inc. v. Communications Workers of Am., 475 U.S. 643, 649 (1986). The question of "'who has the primary power to decide arbitrability' turns upon whether the parties agreed to submit that question to arbitration." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 938 (1995). If the parties agreed to the arbitration of the issue, then the court should defer to the arbitrator's decision. Id.

Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute that the party has not so agreed to submit. AT&T, 475 U.S. at 648. Therefore, unless the question of arbitrability is clearly and unmistakably set out for determination by an arbitrator, the question should be decided by a judge. First Options, 514 U.S. at 944 (quoting AT&T, 475 U.S. at 649) (finding that parties who disagreed as to whether they ever signed on to an arbitration clause, should take the initial dispute on arbitrability to a judge). If the question is not clearly and unmistakably set out for determination by an arbitrator, then there is a presumption against arbitration. Id. at 945.

However, "the question of whether an otherwise valid collective bargaining agreement has expired or has been terminated is different." Abram Landau Real Estate v. Bevona, 123 F.3d 69, 73 (2d Cir. 1997) (holding that parties who disagreed over the expiration of their contract should submit

the dispute to an arbitrator). Although this determination may be intertwined with the determination of whether the issue of arbitrability of a dispute has been left for decision by the arbitrator, the actual decision is more of a question on what issues are set out for arbitration. See id. (distinguishing itself from First Options, 514 U.S. at 943, on the grounds that it did not deal with the interpretation of a contract, which is a question generally left to an arbitrator); AT&T, 475 U.S. at 651. When determining what issues are set out for arbitration, the courts should interpret ambiguities in favor of arbitration. See Abram Landau, 123 F.3d at 73-4.

The dispositive question in deciding whether it is the province of an arbitrator or a court to interpret a termination clause, "is whether the parties have agreed that an arbitrator should decide that question." Id. at 73. In cases in which the agreement contains a "sweeping arbitration clause" that covers all disputes regarding the meaning of the terms and provisions in the agreement and in which the language of the arbitration clause does not expressly exclude disputes over the termination provision, such disputes should be submitted to arbitration. Id. (stating that an arbitration clause providing that an "[a]rbitrator shall have the power to decide all differences arising between the parties to this agreement as to interpretation, application or performance" of this agreement, is a sweeping arbitration clause, covering disputes over the termination clause).

In the present case, both Arbitrators decided the issue of arbitrability. (Obregon Op. and Award at 6; Kaufman Op. and Award at 9.) Article 16, Section 1-2 of the Agreement provides for the submission to arbitration of any

> [D]ifference, disagreement or dispute which arises between the Employer and the Union as to the meaning or interpretation of [the] Agreement; the practice and application of any of the terms of [the] agreement; or, a change or violation of any of the terms of [the] agreement.

(Agreement at 6.)

While this clause does not clearly and unmistakably provide for the arbitration of the issue of arbitrability, it is a broad arbitration clause that covers all disputes regarding the meaning of the terms and provisions of the agreement. Since the clause does not expressly exclude disputes over the termination agreement, such "disputes over expiration or termination must be submitted to arbitration." Brotherhood of Teamsters & Auto Truck Drivers Local # 70 v. Interstate Distrib. Co., 832 F.2d 507, 510 (9th Cir. 1987). Therefore, the dispute over the interpretation of the Continuation Clause and over the matter of arbitrability was properly submitted to arbitration.

In addition, in the Obregon Grievance, Arlen House agreed to submit the issue of arbitrability to arbitration, with the stipulation that Arlen House's participation would not serve as a waiver of its argument that the Agreement had ceased to exist. Where a party has "voluntarily and unreservedly" submitted an issue to arbitration, it is later precluded from arguing that the arbitrator did not have authority to resolve that issue. Jones Dairy Farm v. Local No. P-1236, United Food & Commercial Workers Int'l Union, AFL-CIO, 760 F.2d 173, 175 (7th Cir. 1985). By not contesting the Arbitrator's authority to resolve the question of arbitrability, Arlen House consented to have him decide that question. See Id. at 176. Arlen House's reservation that by submitting the issue of arbitrability to arbitration it did not waive its argument about the Agreement, does not in any way speak to whether Arlen House disputed the Arbitrator's authority to decide the issue of arbitrability. Its consent to submit the arbitrability question to arbitration may be implied from submission. See Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Local 117 v. Washington Employers, Inc., 557 F.2d 1345, 1350 (9th Cir. 1977).

For the reasons discussed above, this Court denies Arlen House's request for declaratory

relief.

## CONCLUSION

Courts must defer to an arbitrator's decision. The deference that should be given is great, and, therefore, arbitrators' decisions are rarely overturned. Arlen House was asking this Court to review the Arbitrators' awards for faulty legal reasoning and mistakes in the law. This would, however, exceed the limits of what the Court is authorized to do. Therefore, the Union's Motion to Dismiss for Failure to State a Claim is granted.

DONE AND ORDERED in Chambers at Miami, Florida, this 10 day of November, 2008.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record